issues in this appeal and the first issue is basic contract law. The waiver of appeal rights provision in the plea agreement. And it's simple basic contract law that these the draft of the contract. In this case, the draft of the contract was the government. And the circuit has said the very same thing. The government is held to the literal terms of the plea agreement. In this case, it was an express condition precedent that the sentence be within the statutory maximum as specified in the plea agreement. It wasn't. The statutory maximum for conspiracy was five years. Sentence here was seven years plus. Assuming that that was a, that that initiates the plea waiver, the heart of your argument for that purpose is to get you to the argument that the enhancement should not have been applied? Right. Okay. And I'm having a little mathematical difficulty with why the enhancement shouldn't be applied, assuming we get there. Because it seems to me even if you exclude that issue, do not count the undercover agent, you've still got at least five people more involved in the conspiracy. But you don't have sufficient evidence to show that he was the leader or organizer. If you take out the... Well, his own cohort called him numero uno. Numero uno, yes. And there's a variety of other stuff. I'm glad you got to that. Yeah. Well... Because that allows me to refer you to United States Sentencing Guidelines section 3B1.1 application note number four, which says titles such as kingpin or boss are not controlling and can't be used. That's not sufficient evidence. And here's the thing. If you take out the references to numero uno and if you take out the instructions that were given to the undercover officer, you don't have enough, number one. Number two, what the district court did in reaching this decision was it made an exercise of discretion based upon evidence that was legally impermissible. Why would you take out the evidence of his instructions to the undercover agent? You don't count the undercover agent. Why would you take out what he said to him and how he directed him and what evidence there was that there was a coherent enterprise? Very simple. What's required by the preponderance of the evidence is that Mr. Villalobos be the organizer or leader of a criminal activity that involves five or more participants. And it did. I don't mean to be sarcastic, but if Mr. Villalobos stands there and gives instructions to his dog, sit, his dog is not a participant in the criminal activity, and therefore... If he gives instructions to a dog and ten human beings at the same time or his dog goes and tells the ten human beings as the intermediary, why isn't he still the leader? If he's giving it, forget about the dog then, if he's giving it to ten human beings who are participants in the criminal activity, yes, he is the leader. But that's not what we have here. What we have here is him giving orders to someone who is not a member and not a participant in the criminal activity. The undercover officer is a feigned accomplice. By law, he cannot be a participant in the criminal activity. What's required under the sentencing guidelines is that you have to show by a preponderance of the evidence that he's giving orders to people who are participants in the criminal activity. The feigned accomplice is not a participant, so you can't use that. Not only can't you use him as a number, but you cannot use the evidence of an instruction given to him because it's just like giving it to a dog. That's what I don't understand. But why? I mean, to me... Because you don't count him. If you only had three other people, he doesn't, it doesn't matter. But the guy didn't, the defendant didn't realize that he wasn't going to count for purposes of enhancement. He was figuring that this guy was part of his operation. Why don't we take a look at what the sentencing guidelines require? I mean, I have here in the brief, like note 4. I know. You don't count him. There's no dispute that you don't count him. Absolutely no dispute. But if you don't count him and if the requirement under the guidelines is that you have to show by a preponderance of the evidence that he's the organizer or leader of a criminal activity that involves five or more participants, how can his orders and instructions to someone who is not a member of the criminal activity have any relevance whatsoever? How can that be? How can that be legally sufficient evidence? It seems to me that utilizing it violates due process. Counsel, that would be evidence of the role that he was playing in the overall conspiracy if we then look around and find five people. And I think you can count him himself. Right. But what we have to find in the evidence is him giving instructions to people who really, truly are participants in the criminal activity. We don't have that here. So if he says to the undercover agent, it's not this clear, but suppose he said I'm going to boss you around just the way I boss around all these other ten people in my organization. So you go out and hire the driver to transport these stolen goods. That's your next test. Well, fortunately for me, we don't have that. But I guess by inference, since he took that role vis-a-vis this person, why isn't it a permissible inference that he took that role vis-a-vis all these other people who said, well, I get to be number two in the organization because I'm almost as powerful as Mr. Villalobos? What the government says is in effect what you're saying, which is that you can infer. The government seems to acknowledge you can use, but you can infer from the fact that he gives instructions and orders to a faint accomplice non-participant. You can infer from that that he's giving orders and instructions to the people who are participants. And the other part, even though the other participant says so. Not to satisfy due process, you can't, because it is just as reasonable to infer that he's not giving instructions and orders to participants than that he is. So do you think we have to completely ignore the fact that the other participants referred to him as numero uno and one of them said, I get to be numero dos, and is all that completely irrelevant in drawing these inferences? According to application note number four, yes, it is. It says expressly, titles such as kingpin or boss are not controlling. But they may not be controlling, but certainly they're part of the evidence. There is, but that's all there is. All that they have is, number one, the orders and instructions to the faint accomplice, and number two, the numero uno material. That's all they have. And what I'm saying is that simply is not enough. And also, I'm sorry, and also the court, the district court didn't seem to recognize the fact that this was not permissible. And therefore, it based its decision on something it shouldn't have based its decision on. So I reserve the respect. Okay. Thank you. Proceeds, Mr. Hofstadt. Good morning, Your Honors. Brian Hofstadt for the United States. The government believes at the outset that this Court should not reach the issue of the role adjustment. The government agrees that this Court has jurisdiction over this appeal insofar as no agreement of the parties could either deprive or confer jurisdiction on this Court. And for that reason, the government believes that this Court should exercise its jurisdiction to correct the error as to the first count, which was, in fact, in excess of the 60-month statutory maximum. But the government does not believe that that requires the wholesale invalidation of the appellate waiver in this case. I don't see why. It seems to me that the waiver said, essentially, I won't appeal if I get a sentence of X or less, and the sentence was more than X. So it's just I don't understand the position that if it's greater than X, all you get to fix is that little piece. I don't understand that argument. Well, we're coming at it at a slightly different angle. Insofar as the government agrees that to the extent there is some sort of ambiguity, another contractual maximum that the Court often looks to is the intent of the parties. And in this case, there seems to be no question that if either the defendant or the government had caught the district court's mistake within seven days of the sentencing, they could have moved for rule correction under Rule 35A, and the appellate waiver would be completely enforced because there would be no technical error upon which to kind of use as a sword to pierce the appellate waiver. And because the government believed that the court changed its mind within seven days for some reason, I guess I don't see why that makes any difference, since it wasn't corrected. The distinction that the government is trying to make is that this is a sort of technical error. It appears to be an oversight by the district court who imposed an 87-month sentence across the board for all of the counts, not accounting for the fact that count one only had a 60-month statutory maximum. So it's not the type of argument, or not the type of correction, and this may be what the Court was getting at, where there was some sort of substantive mistake, which I think is what the Hager case that the defendant was saying was getting at. I mean, in this case, the government did not in any way breach, you know, engage any sort of misconduct in breaching the appellate waiver. Well, we construed the contract against the drafter. Correct. So I think the government's in a hole. And I'd move on to the substance, if I were you. I will take my cue from the Court on that issue. The government does not believe that even reaching the merits of this issue, that the district court clearly erred in imposing a four-level role enhancement. The district court is entitled to draw reasonable inferences from the evidence. As the Court pointed out, in this case, the government believes that the district court can consider the directions that were given to the undercover officer who was running the warehouse. Note 3 of Section 3B1.1 talks about when assessing whether an organization is otherwise extensive, that the district court can consider evidence not only of knowing participants, criminal participants, but also unwitting outsiders. This seems to contemplate that the court may consider the defendant's directions to others. And while it's true in this case that the criminal activity involves five or more criminal participants, the government's position is that it's also otherwise extensive, and that this particular note also indicates that it's appropriate to look at the defendant's directions to people, even if they're not knowing participants, because, as the Court pointed out, as far as the defendant knows, this person is a knowing participant. And so that those the fact that the defendant is, in this case, instructing the undercover warehouseman how to receive the goods is going back to him and requesting from him proof of the search warrant. Exactly. Exactly what was the government's evidence? Why don't you just tell us what the government's evidence is? Oh, of his role? Okay. The evidence is as follows. The defendant in this case personally stole, I think, of like the eight different shipments that underlie the substantive counts, personally stole about, I think, seven of the eight. With almost, with those, he used, he was accompanied by his co-defendant, Emile. Emile, who had said that he was numero dos behind the defendant. So that indicates the defendant was directing Emile, at least as to those particular thefts. They drove those goods to the warehouse. From there, the defendant has admitted to causing the transportation of those goods either to Texas or to California. And, again, the defendant did not admit, and there's no evidence to suggest that he moved these goods personally. Rather, he caused other people to deliver them. And that seems to be corroborated by the fact that at least someone else delivered the Apple computers to the warehouse, that Ron Richardson individual. From there, in fact, there's evidence as well to suggest that Emile and Vigil, with one of the goods of the Nike shoes, drove those shoes from Colorado to the defendant's own house. And then they moved them someplace else in Southern California. We only have evidence about one of the sales of the goods. But as to that sale, the defendant was a key participant in that sale and was directing others. He showed up at the warehouse to transact the sale with the two persons who were there. The broker informed the seller that the defendant had cleaned the computers when they were in Texas. Or the defendant said that he had the computers cleaned when they were in Texas, had the labels taken off. Clearly, he didn't do that himself because he was in California. And that indicates that he was directing others to clean the computers up. At the time, Khaled, the broker, referred to the defendant as the owner of the computers, the person who controlled the computers. When the transaction took place, the defendant received $49 out of the $50,000 that changed hands for those computers. And, again, one of the relevant factors under Note 4 is the fact that the defendant, you know, got a larger share of the fruits than others. So as to that particular sale, the only one we have any evidence, direct evidence about, the defendant was clearly running the show. I mean, he's – and it also seems from the evidence that was presented that the defendant was in charge of these goods as they moved from their initial theft all the way to their sale. And he was in charge of all the individuals who were moving these goods across state lines and ultimately selling them. And the government believes that the titles of numero uno and whatnot corroborate that and that they are relevant, though not controlling, evidence and that the district court, based on all of this evidence, did not commit clear error in finding that the four-level enhancement was warranted. Unless the Court has any further questions. Thank you. Thank you. Mr. Cease. Very briefly, in terms of Mr. Villalobos receiving the $49,000, that was clearly prior to division with the other participants. And therefore, we have no way of knowing what the split was. The evidence that the government referred to in its brief time and time again refers to hearsay and it refers to things such as a statement saying that Ron Villalobos and or his associates. Something or other happened in relation to Ron Villalobos and or his associates. None of that is sufficient to show that it was Ron Villalobos who was leading and ordering rather than one of the associates. The main evidence that the government presented and argued was the numero uno, the numero dos. The sentencing guidelines tell us you can't use that. And it was the orders to the faint accomplice. That's the strongest evidence that they have. The other stuff is primarily Ron Villalobos and or his associates. That's the problem with their case. Thank you, counsel, for your argument. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber